IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| R.A.D. SERVICES, LLC, a Nebraska limited liability company, Assignee; and BROKRAM, INC., Elite Exteriors, a Nebraska Corporation. Assignee; | 8:18-CV-00348 |
| Plaintiffs, | MEMORANDUM AND ORDER |
| vs. | |
| STATE FARM FIRE & CASUALTY COMPANY, | |
| Defendant. | |

## I.   INTRODUCTION

R.A.D. Services, LLC ("R.A.D.") and Brokram, Inc., doing business as Elite Exteriors ("Elite") sued State Farm Fire & Casualty Company ("State Farm") for breach of contract. Before the Court is Defendant's Motion to Strike Plaintiffs' Summary Judgment Exhibits, Filing 74, and Defendant's Motion for Summary Judgment, Filing 55. For the reasons stated herein, the Court grants Defendant's motions.

## II.   BACKGROUND

This suit concerns the alleged assignment of insurance claims to Elite, a general contractor, by seven Nebraska property owners who sustained storm damage to their properties. Filing 27 at 2-4; Filing 57-1 at 1-6. Each property owner had an insurance policy through State Farm that covered certain repair or replacement costs. Filing 57-1 at 1-6, 11. Pursuant to the insurance

1

policies, State Farm would first pay the "actual cash value at the time of the loss of the damaged part of the property," and then, after completion of the repairs or replacements, State Farm would pay "the covered additional amount [the insured] actually and necessarily [spent] to repair or replace the damaged part of the property."[1] Filing 57-1 at 11.

After sustaining property damage, each policyholder submitted a claim to State Farm. Filing 57-1 at 1-6. In return, State Farm paid the "actual cash value" as required by the insurance policies. Filing 57-1 at 1-6. To make repairs to their properties, each of the policyholders hired Elite, a general contractor owned by Richard Davidson. Filing 57-2 at 6, 9-48, 52. The contracts authorized Elite to make repairs "upon approval of [the] insurance claim by [State Farm]" and included a general outline of the work to be done. Filing 57-2 at 9, 21, 32. Thereafter, in 2018, Elite purportedly obtained the policyholders' interests in their insurance claims by assignment. Filing 27 at 5-11. The relevant language in each assignment contract provided:

> FOR VALUE RECEIVED, the Assignor hereby sells and transfers to the Assignee and its successors, assigns and personal representatives, any and all claims, demands, and cause or causes of action of any kind whatsoever which the undersigned has or may have against State Farm, arising from the following claim: [listing policyholder's claim number].

Filing 27 at 5. Contemporaneously with signing the assignment contracts, Elite claims it made oral arrangements with the policyholders. Filing 57-2 at 211-12, 368. According to Elite, it explained that the policyholders were assigning their claims against State Farm to Elite, that the policyholders owed their deductible and the price of any upgrades to their property to Elite, and that Elite in turn promised to "complete all the storm damage related work." Filing 57-2 at 211-12, 368. After

---

[1] The policy conditioned additional payment on completing the repairs or replacements within two years from the date of loss. Filing 57-1 at 11.

2

obtaining these assignments, Elite sent cost estimates to State Farm.[2] Filing 57-2 at 61-113. State Farm disputed the estimates, arguing that they included duplicative charges, incorrect pricing, and unwarranted mark-ups for overhead, and on that basis refused to pay. Filing 57-2 at 115-91; Filing 27 at 3-4.

After State Farm refused to pay Elite, Elite purportedly assigned whatever insurance-claim interests it had from the policyholders to R.A.D. Filing 27 at 3, 12-18. R.A.D. describes itself as a "dispute resolution service" and is managed by the wife of Elite's owner. Filing 57-2 at 54, 195. Despite being a "dispute resolution service," R.A.D. proceeded to send State Farm its own estimates. Filing 57-2 at 218-52. These estimates were higher than Elite's estimates and included charges for "dispute resolution" costs. Filing 57-2 at 195-204. State Farm refused to pay. Filing 27 at 1-4. Undeterred, Elite claims it, at some point in time, made repairs to the policyholders' property without coming to an agreement with State Farm.[3] Filing 27 at 1-4; Filing 57-2 at 284-360. The evidence before the Court shows that Elite's subcontractors did perform some work on the policyholders' property. Filing 57-2 at 284-360. On July 20, 2018, R.A.D. and Elite sued State Farm for breach of contract.[4] Filing 27 at 1-4.

In their Amended Complaint, Plaintiffs argue that the assignments to Elite and the subsequent assignments to R.A.D. are valid, that State Farm had a contractual obligation to pay for the repairs to the policyholders' properties, and that its refusal to do so breaches its insurance

---

[2] In the case of one policyholder, Polak, the policyholder sent an estimate to State Farm before Elite obtained an assignment from him. Filing 57-2 at 268-72. Later, after Elite signed an assignment with Polak, it sent an estimate to State Farm. Filing 57-2 at 61-65. The second estimate, for $35,838.24, was significantly higher than the first estimate of $13,421.89. Filing 57-2 at 61-65, 268-72.

[3] Determining what work was done and when is a difficult task in this case because many of the "invoices" filed as exhibits are so blurry that they are illegible. See Filing 57-2 at 274-360. It is thus unclear what work Elite performed, when it did the work, and how much the work cost. Furthermore, some of the "invoices" have dates that nonsensically precede the various estimates Elite and R.A.D. sent to State Farm. See, e.g., Filing 57-2 at 67, 287 (showing building permit application for one policyholder issued on October 12, 2017 and Elite estimate for same policyholder sent to State Farm on May 22, 2018).

[4] Again, the Court is unable to decipher if Elite made repairs before or after filing suit.

policies. Filing 27 at 1-4. In its June 21, 2021, summary-judgment motion, State Farm challenges the validity of the assignments to Elite and R.A.D. and argues that, by paying the policyholders the "actual cash value" of the claims it has satisfied its obligations under the insurance policies. Filing 56 at 18-25.

### III.     ANALYSIS

#### A. Standard of Review

"Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Garrison v. ConAgra Foods Packaged Foods, LLC*, 833 F.3d 881, 884 (8th Cir. 2016) (citing Fed. R. Civ. P. 56(c)). "[S]ummary judgment is not disfavored and is designed for every action." *Briscoe v. Cnty. of St. Louis*, 690 F.3d 1004, 1011 n.2 (8th Cir. 2012) (internal quotation marks omitted) (quoting *Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011) (en banc)). In reviewing a motion for summary judgment, the Court will view "the record in the light most favorable to the nonmoving party . . . drawing all reasonable inferences in that party's favor." *Whitney v. Guys, Inc.*, 826 F.3d 1074, 1076 (8th Cir. 2016) (citing *Hitt v. Harsco Corp.*, 356 F.3d 920, 923–24 (8th Cir. 2004)). Where the nonmoving party will bear the burden of proof at trial on a dispositive issue, "Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), *except* the mere pleadings themselves." *Se. Mo. Hosp. v. C.R. Bard, Inc.*, 642 F.3d 608, 618 (8th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). The moving party need not produce evidence showing "an absence of a genuine issue of material fact." *Johnson v. Wheeling Mach. Prods.*, 779 F.3d 514, 517 (8th Cir. 2015) (citing *Celotex*, 477 U.S. at 323). Instead, "the burden on the moving party may be discharged by 'showing' . . . that there is an absence of evidence to

support the nonmoving party's case." *St. Jude Med., Inc. v. Lifecare Int'l, Inc.*, 250 F.3d 587, 596 (8th Cir. 2001) (quoting *Celotex*, 477 U.S. at 325).

In response to the moving party's showing, the nonmoving party's burden is to produce "specific facts sufficient to raise a genuine issue for trial." *Haggenmiller v. ABM Parking Servs., Inc.*, 837 F.3d 879, 884 (8th Cir. 2016) (quoting *Gibson v. Am. Greetings Corp.*, 670 F.3d 844, 853 (8th Cir. 2012)). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial." *Wagner v. Gallup, Inc.*, 788 F.3d 877, 882 (8th Cir. 2015) (quoting *Torgerson*, 643 F.3d at 1042). "[T]here must be more than 'the mere existence of *some* alleged factual dispute'" between the parties in order to overcome summary judgment. *Dick v. Dickinson State Univ.*, 826 F.3d 1054, 1061 (8th Cir. 2016) (quoting *Vacca v. Viacom Broad. of Mo., Inc.*, 875 F.2d 1337, 1339 (8th Cir. 1989)).

### B. Failure to Properly File Exhibits

Before proceeding to the merits of State Farm's summary-judgment motion, the Court addresses Plaintiffs' failure to file exhibits in support of their brief in opposition to summary judgment. The Nebraska District Court's Local Rules and Procedures provide, "When filing the opposing brief, the opposing party must also file and serve supporting evidentiary material not previously filed." NECivR 7.1(b)(2)(A). This brief must be filed within twenty-one days after service of the summary-judgment motion. NECivR 56.1(b)(3). Importantly, "[p]roperly referenced material facts in the movant's statement are considered admitted unless controverted in the opposing party's response." NECivR 56.1(b)(1).

On June 21, 2021, State Farm filed its Motion for Summary Judgment. Filing 55. After receiving an extension, Plaintiffs filed their brief in opposition on July 27, 2021. Filing 64.

5

Accompanying this brief was an index with an attorney affidavit. Filing 65. However, the index included no evidence. On July 30, August 3, and August 11, 2021, counsel for State Farm contacted counsel for Plaintiffs, by phone and by email, alerting him that Plaintiffs had failed to file their exhibits. Filing 72-1 at 1. Plaintiffs' counsel finally responded to State Farm's counsel by sending, not filing, only two of their seven exhibits. Filing 72-1 at 1. Finally, on August 24, 2021, State Farm filed its reply brief in support of its summary-judgment motion, without the benefit of seeing Plaintiffs' evidence in opposition to summary judgment. Filing 71. Nearly a month after filing its brief in opposition, Plaintiff filed what appears to be the appropriate exhibits on August 26, 2021, without leave of court. Filing 73. State Farm filed a motion to strike Plaintiffs' improper filing of their exhibits on September 2, 2021. Filing 74. State Farm states it was prejudiced by Plaintiffs' conduct. Filing 75 at 3-4.

The Court grants State Farm's motion to strike the late-filed exhibits.[5] Plaintiffs' failure to file evidence in opposition to its motion for summary judgment, after multiple warnings from State Farm's counsel, is inexcusable. State Farm noted in its motion to strike that Plaintiffs' neglect gave State Farm "no opportunity to assess or address the contents of [the] exhibits." Filing 75 at 3. State Farm had no ability to fully anticipate what Plaintiffs would ultimately file. Filing 75 at 3. The Court concludes State Farm was prejudiced when it had to file a reply brief responding to exhibits that had never been provided to it and responding to Plaintiffs' arguments that relied on the unfiled exhibits. *See* Buffets, Inc. v. Leischow, 732 F.3d 889, 895 (8th Cir. 2013) (upholding district court's rejection of evidence where party did not file evidence until after opposing party had filed its reply because "opposing party [had] no opportunity to respond in the normal briefing process").

---

[5] Even if State Farm had not filed a motion to strike the late-filed exhibits, the Court was prepared to strike the exhibits for failure to timely file them in clear violation of the Court's local rules.

State Farm has also persuasively shown that Plaintiffs acted without any diligence in meeting the Court's deadlines. Filing 75 at 2. Counsel for State Farm alerted Plaintiffs of the missing exhibits three times. Plaintiffs' conduct is a blatant disregard of the Court's rules. Indeed, this Court had already spent considerable time working on these filings prior to Plaintiffs finally filing their missing exhibits on August 26, 2021.[6]

The Eighth Circuit recognizes that "[d]istrict courts have broad discretion to set filing deadlines and enforce local rules." *Reasonover v. St. Louis Cnty.*, 447 F.3d 569, 579 (8th Cir. 2006). In accordance with its broad discretion, the Court will consider State Farm's statement of facts as true and will not consider Plaintiffs' untimely exhibits. *See Holloway v. Union Pac. R.R. Co.*, 762 F. App'x 350, 352 (8th Cir. 2019) (upholding district court's decision to admit statement of facts when opposing party failed to file evidence); *Hamilton v. Nicholson*, No. 803CV443, 2007 WL 1340968, at *3 (D. Neb. Mar. 12, 2007) (granting summary judgment against party failing to file evidence).

### C. Breach of Contract

In its Motion for Summary Judgment, State Farm first contests the validity of the assignments made by the policyholders to Elite. Filing 56 at 19-23. Relying chiefly on the Nebraska Supreme Court case *Valley Boys, Incorporated v. American Family Insurance Company*, 947 N.W.2d 856 (Neb. 2020), State Farm argues that the assignments are invalid because they "do[] not set forth the scope or price of the work (to be) performed in exchange for the transfer of the insured's interests against State Farm." Filing 56 at 19. Elite and R.A.D. respond that assignments of insurance claims are enforceable under Nebraska law, that its agreement to perform

---

[6] The Court further notes that this matter, which is a relatively straight-forward contract dispute, has now been pending with this Court for over three years, with several amended progression orders, continuances, and motions for extensions.

7

work for the insureds constitutes adequate consideration to make the assignments enforceable, and that the parties orally agreed on the work to be perform and how the price was to be measured. Filing 64 at 8-14. Because the written assignments are unenforceable for lack of reasonable certainty and definiteness, and the prior oral agreements are not definite and certain as to the price of upgrades and the scope of the work to be performed, the policyholders did not assign their rights under the insurance policies to Elite. As a result, Elite's assignments to R.A.D. did not give R.A.D. rights under the insurance policies. State Farm is thus entitled to summary judgment.

1. The Written Assignment Contracts

"An assignment is a contract between the assignor and the assignee, and is interpreted or construed according to the rules of contract construction." *Valley Boys*, 947 N.W.2d at 865. In Nebraska, to sue for breach of a contract, the plaintiff must be the real party in interest. *See id.* at 866 (citing *Jacobs Eng'g Grp. Inc. v. ConAgra Foods, Inc.*, 917 N.W.2d 435, 451 (Neb. 2018)); *see also* Neb. Rev. Stat. § 25-301 ("Every action shall be prosecuted in the name of the real party in interest . . . ."). A valid assignment causes the assignor to be the real party in interest; otherwise, the assignee remains the real party in interest. *Id.*

Elite and R.A.D. argue that assignments of claims under insurance policies are enforceable. Filing 64 at 8-11; s*ee Newman v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 239 N.W. 464, 465 (Neb. 1931) (enforcing assignment of insurance policy). But that is not at issue in this case. Rather, State Farm asserts that the assignments in this case, not assignments of insurance policies in general, are invalid. Filing 56 at 18-22. Elite and R.A.D have the burden of establishing that the assignments are enforceable. *Valley Boys*, 947 N.W.2d at 867. "It is a fundamental rule that in order to be binding, an agreement must be definite and certain as to the terms and requirements." *Davco Realty Co. v. Picnic Foods, Inc.*, 252 N.W.2d 142, 146 (Neb. 1977). While absolute certainty is not

required, the terms must be ascertainable with reasonable certainty so that, at the time of performance, there exists some standard to test performance. *Id.* A promise is too indefinite for legal enforcement "[w]here the promisor retains an unlimited right to decide later the nature or extent of his or her performance." *Valley Boys*, 947 N.W.2d at 868.

Looking at the terms of the assignment contracts, it is clear they are not reasonably definite or certain. While the policyholders agreed to assign their rights under their State Farm insurance policies, the assignments are silent as to what Elite agreed to do in return. The only mention of Elite's obligations under the assignment contracts are the words "for value received." Filing 27 at 5. By failing to outline its performance in any way, Elite has improperly retained an "unlimited right to decide later the nature or extent of [its] performance." *Id.* at 868-69. This makes Elite's "promise . . . too indefinite for legal enforcement." *Id.* at 868; *see also Acklie v. Greater Omaha Packing Co.*, 944 N.W.2d 297, 306 (Neb. 2020) (holding that, when the promisor has an unlimited right to determine later the nature and extent of its performance, "the promisor's unlimited choice in effect destroys the promise and makes it illusory."). Therefore, the written assignment contracts, by themselves, are unenforceable as a matter of law.[7]

2. *The Oral Arrangements with the Policyholders*

Perhaps recognizing that the written assignment contracts are defective, Elite and R.A.D. emphasize that Elite made oral arrangements with the policyholders prior to signing the written

---

[7] The written assignments are also deficient for lacking mutuality of obligation. "Generally, mutuality of obligation is an essential element of every enforceable contract and consists in the obligation on each party to do, or permit something to be done, in consideration of the act or promise of the other." *Johnson Lakes Dev., Inc. v. Cent. Nebraska Pub. Power & Irrigation Dist.*, 576 N.W.2d 806, 817 (Neb. 1998). "An agreement which depends upon the wish, will, or pleasure of one of the parties is illusory and does not constitute an enforceable promise." *Valley Boys*, 947 N.W.2d at 867. Here, the assignment contracts do not bind Elite to any performance. The only reference to Elite's performance is "for value received." "Value received," if it has already been received, is past consideration that is insufficient to support a contract. *Thomas Livestock Co., Inc. v. Rapp*, No. A-99-299, 2000 WL 562040, at *3 (Neb. Ct. App. Apr. 25, 2000). Nor does it state Elite must do anything in consideration of the policyholders' agreement to assign their insurance-policy interests to Elite. Thus, the written assignments lack mutuality of obligation and are invalid as a matter of law.

assignments. Filing 64 at 8, 11. It is unclear if Elite and R.A.D. are alleging that the oral agreements themselves are valid assignments, or if the oral agreements are parol evidence of what Elite agreed to do under the written assignment contracts. Regardless, the terms of the oral arrangements Elite made with the homeowners are not reasonably certain or definite enough to create an enforceable assignment, nor do they cure the defects within the written assignments.

Elite and R.A.D. allege that the oral arrangements between the policyholders and Elite required the policyholders to assign their claims against State Farm to Elite and to pay "the deductible and . . . any upgrades." Filing 57-2 at 211-12. In return, Elite agreed "to complete all work to custom standardary [sic] practices and make sure all the work gets done properly." Filing 57-2 at 212. Whether considered as an attempt to form a contract or as parol evidence, the oral arrangements are insufficient to assign rights to Elite. Notably absent from these oral arrangements is the scope of work Elite was to perform and the price policyholders agreed to pay for any upgrades. *See* Webster Design Assocs., Inc. v. Neb. City Tourism & Com., Inc., No. A-18-984, 2019 WL 4023744, at *5 (Neb. Ct. App. Aug. 27, 2019) (holding that, in the context of a contract for advertising and marketing work, price and scope of work are essential terms). Because scope of work and price for upgrades have been left undetermined and uncertain, it would be impossible for a court to determine when a breach has occurred. *See City of Scottsbluff v. Waste Connections of Neb., Inc.*, 809 N.W.2d 725, 741 (Neb. Ct. App. 2011) (holding that no contract forms "if the essential terms are left open or are so indefinite that a court could not determine whether a breach had occurred or provide a remedy"). Therefore, the lack of these essential terms precludes contract formation.[8]

---

[8] Elite and R.A.D. argue that they came to an agreement with the policyholders as to how price was to be measured. Filing 64 at 11. However, there is nothing in the record informing the Court about this alleged agreement. Thus, their bare assertions in their brief are insufficient to establish an agreement with the policyholders as to price. *See Barton*

10

As State Farm correctly notes, the Nebraska Supreme Court case of *Valley Boys* is instructive. In *Valley Boys*, the plaintiff roofing company sued the defendant insurance company, alleging that the insurance company failed to pay the full amounts due under several insurance policies. *Valley Boys*, 947 N.W.2d at 861. In that case, as in this case, the homeowners purportedly assigned their interests in the insurance policies to the roofing company. *Id.* Eight of the nine assignments referenced a "Customer Service Agreement," which stated that "this contract may not include an explicit price" and that the roofing company's performance was "contingent upon [the roofing company] reaching agreement with the insurance company on the scope of repairs and/or replacement." *Id.* at 862. The insurance company, as State Farm does in this case, defended on the grounds that the assignments were invalid because there was never an agreement on scope of work and price. *Id.* at 862.

After the trial court entered judgment notwithstanding the verdict against the roofing company, the roofing company appealed, and the Nebraska Supreme Court affirmed in favor of the insurance company. *Id* at 870. The Court observed, "A review of the framework of insurance coverage in this case shows that 'scope of work' and 'price' are vital terms." *Id.* at 868. Without sufficiently detailing the "scope of work," the roofing company had improperly retained an "unlimited right to decide later the nature or extent of [its] performance," making its promise to perform too indefinite for legal enforcement. *Id.* at 868-69. Moreover, because the assignments did not state an agreed-upon price, the Court held that the assignments lacked consideration. *Id.* at 869-70.

---

*v. Taber*, 908 F.3d 1119, 1125-26 (8th Cir. 2018) (mere assertions in a brief are not evidence). Even if there was such an agreement about how to measure price, the Nebraska Supreme Court has expressed skepticism that such agreements establish price in a reasonably definite and certain manner. *See Valley Boys*, 947 N.W.2d at 869 (finding that Xactimate, a system that computes price in the home-repair context, was insufficient to establish price as two adjusters using it could come to different results).

11

The same result is warranted in this case. Price and scope of work are essential terms of the assignment contracts. If the oral arrangements with the policyholders are considered parol evidence, they do not cure the defects within the written assignment contracts. If the oral arrangements are themselves assignment contracts, they are similarly defective for lack of certainty and definiteness. Because the oral arrangements had no agreement on the price of upgrades[9] and the scope of work there was no valid assignment to Elite. Therefore, State Farm is entitled to summary judgment as a matter of law.[10]

3. Subsequent Conduct

Finally, Elite and R.A.D. argue that "Elite . . . actually performed its agreed work" and that "Elite then did exactly what it agreed to do, which was to . . . look to the insurance company for payment." Filing 64 at 11-13. The Court construes this argument to mean that Elite's and the policyholders' conduct following the signing of the invalid assignments cured any defects in the written assignments.

The Nebraska Supreme Court has recognized that "[e]ven though the parties have expressed an agreement in terms so vague and indefinite as to be incapable of interpretation with a reasonable degree of certainty, they may cure this defect by later verbal clarification or their subsequent conduct that indicates their own practical interpretation." *Neb. Nutrients, Inc., v. Shepherd*, 626 N.W.2d 472, 500-01 (Neb. 2001) (citing Arthur L. Corbin, Corbin on Contracts §

---

[9] Nothing in the record shows what upgrades each policyholder requested and what Elite would charge for those upgrades. Such an arrangement was foreclosed by *Valley Boys*, which held that leaving scope of work and price to be determined in the future improperly left to the promisor the ability to later decide the nature and extent of its performance. *See Valley Boys*, 947 N.W.2d at 868. The alleged oral arrangements left any agreements as to any upgrades for the future.

[10] The estimates sent to State Farm are also insufficient to establish the price of upgrades and the scope of work. First, the estimates do not include upgrades, most likely because State Farm was only responsible for making repairs for storm damage. Second, there is no evidence that the homeowners ever agreed to the scope of work in the estimates. *See Valley Boys*, 947 N.W.2d at 868 (holding that provisions in certain estimates and invoices were insufficient to establish scope of work because there was no evidence they "were ever sent to the homeowners.").

4.7 at 606 (rev. ed. 1993)), *abrogation on other grounds recognized in Sutton v. Killham*, 825 N.W.2d 188 (Neb. 2013). "[A]n indefinite and therefore unenforceable 'agreement to agree' may become enforceable when the missing term is subsequently supplied by the parties." *Id.* at 500.

By examining the evidence before the Court, the subsequent conduct by Elite and the policyholders does not resolve the uncertainty and indefiniteness as to price of the upgrades and scope of work. The only evidence of any work done by Elite is subcontractor invoices, which are so blurry as to be illegible, and some receipts from Home Depot. Filing 57-2 at 274-360. These invoices and receipts, which at most show that some work was done by Elite's subcontractors on the policyholders' houses, do not assist in interpreting what constituted the scope of the work Elite agreed to perform. *Cf. Valley Boys*, 947 N.W.2d at 868 (rejecting argument that invoices were sufficient to establish the scope of work under the assignment contracts). The Court is still unable to determine Elite's obligations under the assignment contracts. *See Acklie*, 944 N.W.2d at 306 ("[A contract] must identify the subject matter and spell out the essential commitments and agreements with respect thereto.").

Nor do the invoices and receipts illuminate the agreed-upon price for upgrades. The invoices only speak to the amount the subcontractors charged Elite. They do not show what Elite charged the policyholders, nor what the policyholders agreed to pay. Indeed, there is no evidence that the policyholders have made any payments to Elite. This case is in stark contrast to subsequent conduct the Nebraska courts have held to be sufficient to cure uncertain and indefinite contracts. *See Neb. Nutrients*, 626 N.W.2d at 500-01 (holding that indefinite agreement to fund joint venture became enforceable after one party to the contract agreed to pay for "the rest of the construction" and then advanced funds for over two years, while other parties fulfilled all their duties under the contract); *MBH, Inc. v. John Otte Oil & Propane, Inc.*, 727 N.W.2d 238, 248-50 (Neb. Ct. App.

13

2007) (holding that indefinite contract to transfer unknown amount of inventory at unspecified price became enforceable when one party shipped items to the other party, provided inventory lists and bills for the items shipped, and the other party accepted the items, inventory lists, and bills). Scope of work and price of the upgrades continue to be "missing terms" unsupplied by Elite's and the policyholders' subsequent conduct. Thus, even considering these receipts and invoices, the assignment contracts are not sufficiently certain and definite to form a valid contract.

4. *Assignments from Elite to R.A.D.*

Having concluded that the assignments between the policyholders and Elite are invalid, the Court has little to address in assessing the validity of the assignments between R.A.D. and Elite. "The assignee of a chose in action acquires no greater rights than those of the assignor . . . ." *W. Ethanol Co., LLC v. Midwest Renewable Energy, LLC*, 938 N.W.2d 329, 342 (Neb. 2020). Elite had no rights in the policies to assign to R.A.D. Thus, R.A.D. acquired no claims to enforce against State Farm, and State Farm is entitled to summary judgment on R.A.D.'s breach-of-contract claim.

## IV. CONCLUSION

For the foregoing reasons, the Court grants defendant State Farm's Motion to Strike and Motion for Summary Judgment on Count I of plaintiff R.A.D.'s and plaintiff Elite's Amended Complaint. Accordingly,

IT IS ORDERED:

1. Defendant's Motion to Strike Plaintiffs' Exhibits, Filing 74, is granted;

2. Defendant's Motion for Summary Judgment, Filing 55, is granted;

3. Plaintiffs' Amended Complaint, Filing 27, is dismissed; and

4. The Court will enter a separate judgment.

Dated this 7th day of September, 2021.

BY THE COURT:

_____
Brian C. Buescher
United States District Judge

15